UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

RICKY TEJADA,                                          :
                                                       :
                          Plaintiff,                   :
                    v.                                 :         No. 5:14-cv-05604
                                                       :
CORRECTIONAL OFFICER DALE et al.,                      :
                                                       :
                          Defendants.                  :
_____

## MEMORANDUM

**Defendants' Motion to Dismiss, ECF No. 21 – Granted in Part and Denied in Part**

**Joseph F. Leeson, Jr.**                                          **September 30, 2015**
**United States District Judge**

      Presently before the Court is a Motion to Dismiss filed by Defendant Correctional Officer Dale of the Lehigh County Prison and Defendant Carol Sommers, Grievance Coordinator of the Lehigh County Prison. ECF No. 21. Defendants seek to have Plaintiff Ricky Tejada's six claims dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief may be granted. Plaintiff asserts causes of action against Defendants for violations of his Eighth and Fourteenth Amendment rights, violations of his rights under the Pennsylvania Constitution and Code of Regulations, assault, and battery, arising out of Defendant Dale's alleged use of force against Plaintiff, which Plaintiff claims caused him to suffer potentially permanent injuries. For the following reasons, this Court will grant Defendant's Motion to Dismiss in part and will deny the Motion in part.

## I.      Factual Background

Plaintiff, acting pro se, filed a complaint in the Lehigh County Court of Common Pleas on February 24, 2014. Following the removal of this matter to this Court, and following Defendants' first Motion to Dismiss, ECF No. 2, Plaintiff filed an Amended Complaint on December 11, 2014. Am. Compl., ECF No. 17.[1] The Amended Complaint alleges that Plaintiff, while an inmate at Lehigh County Prison, had previously notified the Lehigh County Jail of his desire to be provided with kosher meals in accordance with his religious beliefs. Id. ¶¶ 7-10. Plaintiff alleges that, on August 16, 2013, Defendant Dale did not provide Plaintiff with a kosher meal, and when Plaintiff stated that he would like to receive his requested meal due to his religious beliefs, Defendant Dale replied that he didn't care about Plaintiff's kosher meal and that Plaintiff would not eat. Id. ¶¶ 10-11. According to Plaintiff, he and Defendant Dale have had a "long history of problems," but Plaintiff claims that prison officials have not taken any steps to avoid future problems between the two. Id. ¶ 17.

Plaintiff allegedly asked to see Defendant Dale's supervisor and for a grievance form. Id. ¶ 11. Defendant Dale allegedly refused. Id. Plaintiff then proceeded to insert his arm into the slot in his cell door to indicate that he wished to speak to a higher ranking officer. Id. ¶¶ 12-13.[2] In response, Defendant Dale allegedly warned Plaintiff that if he did not remove his arm from the slot, he would break his arm. Id. ¶ 14. Plaintiff replied that he would remove his arm after Defendant Dale provided him with a grievance form or allowed him to speak to a supervisor. Id. ¶ 15. According to the Amended Complaint, Defendant Dale again warned Plaintiff that he was

---

[1]      As Defendants' point out, Plaintiff had earlier amended his complaint in the Lehigh County Court of Common Pleas. See Notice of Removal, ECF No. 1.Thus, Plaintiff's Amended Complaint here is in fact the second amended complaint that Plaintiff has filed in this matter.
[2]      Plaintiff claims that this action is a commonly understood and accepted method of indicating that an inmate wishes to speak to a prison official's superior or request a grievance form. Am. Compl. ¶ 13.

going to break his arm if he did not comply with his instructions, and upon Plaintiff's ensuing

shout for help, "[D]efendant grabbed [his] arm causing [P]laintiff['s] face to bang against the cell

door" and "began a series of twists, pulls, turns, yanks, bending, and squeezing of the

plaintiff['s] arm, wrist, hand, and fingers . . . ." Id. ¶¶ 15-16. Defendant Dale allegedly told

Plaintiff to "put [his] arm in the slot before it brakes you nut of a Jew." Id. ¶ 16. Plaintiff alleges

that he sustained bruises, lacerations, swelling and pain throughout his face and body,

specifically his arm, fingers, hand, shoulder, and wrist.  Id. ¶ 19. Plaintiff alleges that he received

medical attention following the incident and pictures of his injuries were taken. Id. ¶ 20. Plaintiff

alleges that "many of the injuries [he] suffered may be permanent, including bad shoulder." Id. ¶

19.

       After the incident, Plaintiff filed multiple grievances against Defendant Dale pursuant to

the prison's internal grievance procedures, but as of the date of his Amended Complaint, he has

allegedly not received any resolution of them.[3]

       Defendants filed the present Motion to Dismiss the Amended Complaint on December

23, 2014. ECF No. 21.

## II.    Standard of Review

### A.    Motion to Dismiss

       When rendering a decision on a motion to dismiss, this Court must "accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief." See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker

---

[3]      Defendants claim that these grievances were heard and denied. Mot. Dismiss, ECF No.
21. Plaintiff responds, however, that the grievances to which Defendants referred were separate
from the grievances Plaintiff filed in connection with Defendant Dale's use of force, which
Plaintiff states are still pending. ECF No. 32.

v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Court subsequently laid out a two-part approach to reviewing a motion to dismiss under Rule 12(b)(6).

First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. at 678.  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive the motion; "instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id.; Phillips, 515 F.3d at 233 (quoting Twombly, 550 U.S. at 563 n.8). While Rule 8 of the Federal Rules of Civil Procedure, which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," was "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  (citing Twombly, 550 U.S. at 555)); see Fed. R. Civ. P. 8(a)(2).  For "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests."  Phillips, 515 F.3d 224, 232 (citing Twombly, 550 U.S. at 555 n.3).

Second, the Court emphasized, "only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief

. . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Iqbal, 556 U.S. at 678.  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 555).  This is because Rule 8(a)(2) "requires not merely a short and plain statement, but instead mandates a statement 'showing that the pleader is entitled to relief.'"  See id., 515 F.3d at 234 (quoting Fed. R. Civ. P. 8(a)(2)).  If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "Detailed factual allegations" are not required, id. at 678 (quoting Twombly, 550 U.S. at 555), but a claim must be "nudged . . . across the line from conceivable to plausible," id. at 680 (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,'" but there must be "more than a sheer possibility that a defendant has acted unlawfully."  Id. at 678 (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  Id. (quoting Twombly, 550 U.S. at 557).  Traditionally, pro se plaintiffs' complaints have been liberally construed, only dismissed if the plaintiff can prove no set of facts to support the claim. See U.S. v. Miller, 197 F.3d 644, 648 (3d. Cir. 1999).

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

III.    <u>Discussion</u>

Initially, this Court finds that Defendant Sommers is named solely based on her position as grievance coordinator. There are no allegations that she was personally involved in the alleged excessive use of force by Defendant Dale on August 16, 2013. See <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of <u>respondeat superior</u>"). Accordingly, all claims against Defendant Sommers are dismissed. See <u>Pressley v. Beard</u>, 266 F. App'x 216, 218 (3d Cir. 2008) (dismissing the defendants "named only for their supervisory roles" and those "defendants who were sued based on their failure to take corrective action when grievances [ ] were referred to them").

A.    **Count 1: Excessive Force**

The Eighth Amendment of the United States Constitution protects against "cruel and unusual punishment." U.S. Const. amend. XIII. Plaintiff alleges in Count 1 that Defendant Dale's conduct constituted excessive force, infringing upon his constitutional rights. In order for a prisoner to state a claim for excessive force against a corrections officer, he must establish that the force used was an "unnecessary and wanton infliction of pain." <u>Whitley v. Albers</u>, 475 U.S. 312, 320 (1986). This analysis has both subjective and objective components, and seeks to resolve the central question of "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." <u>Id.</u> at 320-21 (quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir. 1973)). Courts look to several factors, established by the Court in <u>Whitley</u>, to draw this distinction: (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and

inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response." 475 U.S. at 321 (citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley, 475 U.S. 312).

Courts have consistently held that, in cases where the plaintiff is handcuffed or restrained at the time force is applied, the inmate cannot be perceived as a threat, and thus, any force used is generally disproportionate to that which is necessary. See, e.g., Jacobs v. Durko, No. CIV. A. 04-1941, 2007 WL 2769436, at *2-3 (W.D. Pa. Sept. 17, 2007) (concluding force was unjustified when plaintiff was already handcuffed and shackled); Gray v. Hamilton, No. 15-CV-00421, 2015 WL 2265470, at *1, 3  (S.D. Ill. May 12, 2015) (determining there was no need for force when plaintiff extended his hand out of his cell's "chuckhole" in a non-threatening manner). Courts reach the opposite conclusion when the force used was for the purpose of maintaining order or security. See Whitley, 475 U.S. at 323 (use of firearm during riot did not amount to cruel and unusual punishment). Nevertheless, "there is no constitutional violation for 'de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" Brooks v. Kyler, 204 F.3d 102, 107 (3d Cir. 2000) (quoting Hudson, 504 U.S. at 9-10); Acosta v. McGrady, No. CIV.A. 96-2874, 1999 WL 158471, at *8-9 (E.D. Pa. Mar. 22, 1999) (determining that throwing inmate into wall, which caused inmate to suffer from swelling in his hands and headaches for a few days, was de minimis use of force).

Because the objective component of Eighth Amendment claims draws context from societal standards, "contemporary standards of decency" are always violated when an officer uses force with malicious and sadistic intent, despite the absence of significant injury. Hudson,

503 U.S. at 9. For if only significant injuries were punished, "[t]he Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Id. (concluding that prison guards violated the Eighth Amendment when they punched and kicked a handcuffed inmate, causing him to suffer minor bruises, facial swelling, loosened teeth, and a cracked dental plate because the use of force was unnecessary and malicious, therefore violating societal standards of decency).

At this stage of the proceedings, this Court finds that Plaintiff has pled an Eighth Amendment claim against Defendant Dale.

**B.     Count 2: Failure to Train**

Plaintiff next alleges that Defendants' alleged constitutional violations were the result of the Lehigh County Department of Corrections' failure to "properly screen, hire, train, supervise, control, investigate and/or discipline its corrections officers . . . ." Am. Compl. ¶ 37. However, the only remaining Defendant is Officer Dale. Although Plaintiff initially listed the "City of Lehigh County" as a named Defendant, on December 16, 2014, an order signed by Honorable William H. Yohn, Jr. dismissed the City of Lehigh County as a party to this action, finding that no such entity exists. ECF No. 19. Thus, because Plaintiff has failed to bring this claim against any municipality, there is no basis for liability, and this Count must be dismissed.

**C.     Count 3: Violation of Rights Under Pennsylvania Constitution**

**i. Violation of Article 1 § XIII of PA Constitution**

Plaintiff alleges that Defendants violated Article 1 Section 13 of the Pennsylvania Constitution, which provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." Pa. Const. art. I, § 13. This language parallels the Eighth Amendment of the United States Constitution. Thus, the Pennsylvania prohibition is

coextensive with the Eighth and Fourteenth Amendments of the United States Constitution. See Commonwealth v. Cottam, 616 A.2d 988, 1003 (Pa. Super. 1992). "The same standard applies to claims brought under Article 1, Section 13 of the Pennsylvania Constitution." Eliason v. Cnty. of Lehigh, No. CIV.A. 08-5755, 2009 WL 2526199, at *4 (E.D. Pa. Aug. 14, 2009). Because this Court concludes that Plaintiff states a claim for relief against Defendant Dale based on violations of the Eighth Amendment, Plaintiff successfully states a claim under the Pennsylvania Constitution as well.

### ii. Violation of Article 1 § IX of PA Constitution

Plaintiff also advances a claim founded on an alleged violation of his procedural and substantive due process rights under Article 1, Section 9 of the Pennsylvania Constitution, on the grounds that he was subjected to corporal punishment without first being told of the offenses alleged against him and was deprived of a liberty interest without a determination of guilt by a legally constituted tribunal. Am. Compl. ¶ 44. Article 1 Section 9 states, in pertinent part, that a person cannot be "deprived of his life, liberty, or property unless by the judgment of his peers or the law of the land." Pa. Const. art. I, § 9.[4]

---

5.      In full, Article 1 Section 9 states:

> In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land. The use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself.

Pa. Const. art. I, § 9.

But "to the extent that [Plaintiff] alleges due-process violations relating to excessive force, . . . these claims are properly analyzed under the Eighth Amendment," not under the rights afforded by substantive due process jurisprudence. See Banks v. Mozingo, 423 F. App'x 123, 128 (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)) (dispensing with inmate's claims under the Due Process Clause of the Fourteenth Amendment following the court's conclusion that inmate's allegations of excessive force, denial of medical care, and conditions of confinement were not actionable under the Eighth Amendment). In Graham v. Connor, the United States Supreme Court explained that where a particular Amendment "provides an explicit textual source of constitutional protection . . .that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. 386, 395 (1989). Because Plaintiff's excessive force claim sounds in the protections of the Eighth Amendment, this claim should be analyzed under that Amendment's framework, and not in the language of substantive due process. Thus, this claim is dismissed.

**D.     Count 4: Violation of Pennsylvania's Code of Regulations**

**i. Violation of PA Code Title 37 § 95.240**

Plaintiff alleges that the use of force by Defendant Dale was unlawful under Title 37 § 95.240 because "it was imposed without telling Plaintiff the offenses alleged against him and without giving him opportunity to present defense with respect to his punishment." Am. Compl. ¶ 53. For the following reasons, this claim will be dismissed. Title 37 § 95.240 is, in essence, an instruction to county jails to enact rules and policies applicable to inmate disciplinary procedures, and to list the minimum requirements necessary before discipline can be imposed following a rule violation. 37 Pa. Code § 95.240. While a violation of this provision is not often alleged, those Courts that have analyzed 37 Pa. Code § 95.240 have provided guidance on the

meaning of "discipline" in a prison context. <u>See, e.g.</u>, <u>Richardson v. Yancik</u>, No. 2057 C.D.

2007, 2008 WL 9401558 (Pa. Commw. Ct. June 11, 2008) (ordering inmate to spend 30 days in

disciplinary confinement after misconduct);  <u>Williams v. Sweeney</u>, 882 F. Supp. 1520 (E.D. Pa.

1995) (reclassifying inmate to administrative segregation following acts of aggression); <u>Herring</u>

<u>v. Kurtz</u>, No. CIV.A. 87-2749, 1987 WL 16049 (E.D. Pa. Aug. 20, 1987) (banning inmate from

exercising, using the library, or making telephone calls for two days).

      In light of the surrounding case law, Plaintiff states no plausible claim for relief. The use

of force, whether it be to maintain order or cause harm, falls outside the realm of "discipline" as

interpreted by 37 Pa. Code § 95.240. That regulation is relevant only to procedures such as

placing inmates in confinement or eliminating privileges following a rule violation, and thus, is

not relevant to Plaintiff's complaint regarding his lack of notice before Defendant Dale's alleged

use of force. The conduct complained of here was not a disciplinary procedure. Thus, 37 Pa.

Code § 95.240 is not applicable, and this claim is consequently dismissed.

### ii. Violation of PA Code Title 37 § 95.241

      Plaintiff also alleges a violation of 37 Pa. Code § 95.241, a provision which lays out the

minimum requirements applicable to prison security. In relevant part, the use of force by prison

officials is restricted to "justifiable self-defense, protection of others, protection of property,

prevention of escapes . . . and only the least amount of force necessary to achieve that purpose is

authorized." 37 Pa. Code § 95.241(2)(i). This section resembles the five-factor test established in

<u>Whitley</u> distinguishing between good-faith uses of force and force used to cause harm. 475 U.S.

at 321. Neither party has cited authority as to whether the state administrative regulation of 37

Pa. Code § 95.241 provides a cause of action for damages. <u>See</u> <u>Benson v. City of Philadelphia</u>,

No. CIV.A. 89-CV-8571, 2000 WL 1230250, at *5 (E.D. Pa. July 24, 2000) (granting summary

judgment on the count alleging a violation of 37 Pa. Code § 95.241 because "Section 1983 does not provide a cause of action for violations of state statutes, and a state statute cannot create a constitutional right."). However, at this time, the Court will deny the motion to dismiss this claim because the analysis of a claim under 37 Pa. Code § 95.241, if any, parallels Plaintiff's successfully stated excessive force claim under the Eighth Amendment.

**E.     Count 5: Assault and Battery**

Plaintiff further claims that the alleged excessive force and preceding events constitutes assault and battery under Pennsylvania law. In Pennsylvania, "an assault occurs when one acts with the intent to place another in reasonable and immediate apprehension of harmful or offensive contact, and that act does cause such apprehension." Zimmerman, 654 F. Supp. 2d at 255. In addition, for an assault to occur, the actor must be in a position to inflict this contact and take some affirmative action to do so.[5] See Picariello v. Fenton, 491 F. Supp. 1026, 1037 (M.D. Pa. 1980). Battery, on the other hand, requires that the actor had the intent to cause harmful or offensive contact with the person of the plaintiff, and that such contact actually occurred. Benjamin v. Fassnacht, 39 F. Supp. 3d 635, 648 (E.D. Pa. 2014). While corrections officers have the authority to use necessary force under appropriate circumstances, the reasonableness of this force in relation to their employment duties determines whether particular conduct is considered an assault and battery. See Picariello, 491 F. Supp. at 1038 (determining that "necessary touchings by correctional officers of inmates in the performance of their duties are not batteries, but privileged contacts").

Under Pennsylvania law, Plaintiff successfully states a claim for assault and battery against Defendant Dale. While Defendant Dale's alleged statement, "if you don't move your

---

[5] Mere words, however threatening, cannot amount to an assault if no further affirmative action is taken to create the implication of imminent contact.

arm, I will break it," would not be enough to constitute an assault by itself, Defendant Dale's immediate proximity to Plaintiff, and Plaintiff's reasonable apprehension of the imminent contact which would follow allows Plaintiff to state a claim. Am. Compl. ¶ 14. In addition, Defendant Dale's alleged words and actions, coupled with the alleged use of force, are sufficient for Plaintiff to state a claim for battery. Furthermore, because Defendant Dale's contact with Plaintiff was potentially malicious, it is plausible that the use of force was outside of Defendant Dale's scope of employment. Thus, Defendant's motion to dismiss Count 5 is denied.

**F.      Count 6: Denial of Access to Courts**

Lastly, Plaintiff alleges that the Defendants' failure to provide him with a grievance form interfered with his right of access to the courts. All prisoners have a constitutional right of access to court. Bounds v. Smith, 420 U.S. 817, 821 (1977). While this right is not unlimited, it ensures that inmates will be given a reasonable opportunity to be heard and to present claimed violations of constitutional rights. Id. However, inmates have no constitutional right to a prison grievance system. See Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D. Pa. 1997) aff'd, 142 F.3d 430 (3d Cir. 1998); Platt v. Brockenborough, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007) (determining a "prison's failure to respond [to a prison grievance] does not infringe on the prisoner's access to the courts," as a prisoner who does not receive a grievance response can nonetheless file suit in federal court); Williams v. Frame, 821 F. Supp. 1093, 1100 (E.D. Pa. 1993) (finding no evidence that the defendants' "alleged failure to provide [the plaintiff] grievance forms has denied him the ability to use the prison grievance process"); Landor v. Bledsoe, No. 1:11-CV-759, 2012 WL 1906176, at *5 (M.D. Pa. May 25, 2012) (finding that the plaintiff's attempt to assert a claim based on prison officials not providing him grievance forms "necessarily fails"). Accordingly, this claim is dismissed.

**IV.** **Conclusion**

After review, it is determined that the Defendants' motion to dismiss Counts 1, 3 (in part), 4 (in part), and 5 is denied. Furthermore, this Court concludes that Defendant's motion to dismiss Counts 2, 3 (in part), 4 (in part), and 6 is granted because, despite a broader construction of pro se complaints, Plaintiff can prove no set of facts to support these claims. U.S. v. Miller, 197 F.3d at 648. These claims will be dismissed with prejudice, as further amendment would be futile.[6] Moreover, all claims against Defendant Sommers are dismissed because Plaintiff has failed to allege her personal involvement.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[6] A court may deny leave to amend a complaint with prejudice if the amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Plaintiff has already amended the complaint twice, and it does not appear that a third amendment would cure the deficiencies of the complaint  as to these counts.

14