UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICKY TEJADA, | : |
| Plaintiff, | : |
| v. | : No. 5:14-cv-05604 |
| CORRECTIONAL OFFICER DALE OF LEHIGH COUNTY PRISON and LEHIGH COUNTY, | : |
| Defendants. | : |

# O P I N I O N
**Plaintiff's Motion for Leave to Amend, ECF No. 92—Granted in Part**

**Joseph F. Leeson, Jr.**                                                                         **August 2, 2018**
**United States District Judge**

      In this prisoner civil rights case, Plaintiff Ricky Tejada requests leave of Court to amend his complaint for the third time.[1] Because many of the allegations set forth in the latest proposed amendment merely restate claims alleged in his prior complaints, and other allegations fail to state viable claims for relief, this Court denies leave to amend for the most part. However, a few of the allegations concern events that occurred after Tejada's most recent complaint—this Court will treat these claims as supplemental pleadings and will require Defendants to respond.

---

[1] The current operative complaint was filed on December 11, 2014, ECF No. 17, and several counts survived Defendants' motion to dismiss. Op. Mot. Dismiss, ECF Nos. 37-38. Tejada filed the instant motion for leave to amend on May 16, 2016, with his proposed Amended Complaint. ECF No. 92. After several discovery disputes, this case was placed in civil suspense to allow Tejada to seek an attorney on the Eastern District's Prisoner Civil Rights Panel. After no attorney volunteered, Tejada indicated his intent to proceed pro se, and the case was removed from suspense on May 3, 2018. ECF No. 128.

## I. LEGAL STANDARD: LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a), a court should grant a party's motion for leave to amend "where justice so requires." Fed. R. Civ. P. 15(a). In determining if justice requires that the court allow the amendment, the court may consider "undue delay, bad faith, prejudice to the opposing party, and futility." *Blake v. JPMorgan Chase Bank, N.A.*, 259 F. Supp. 3d 249, 253 (E.D. Pa. 2017) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Delay can be classified as "'undue' . . . when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Id.* (citing *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008)). The court must "focus on 'the movant's reasons for not amending sooner.'" *Id.* (citing *Cureton v. Nat'l Collegiate Athl. Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)).

An "[a]mendment is futile if a proposed amended complaint is 'frivolous or advances a claim or defense that is legally insufficient on its face.'" *Harris v. Steadman*, 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) (citing *Thomas v. SmithKline Beecham Corp.*, No. 00–2948, 2002 WL 32351172, at *3 (E.D. Pa. Sept. 5, 2002)). The court must determine if "the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* (citing *Anderson v. City of Phila.*, 65 Fed. App'x 800, 801 (3d Cir. 2003)). Like when ruling on a motion to dismiss, the court must "consider only those facts alleged in the proposed amended complaint, accepting the allegations as true and drawing all logical inferences in favor of the plaintiff." *Id.* (citing *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994)). However, the court is not required to "accept as true legal conclusions couched as factual allegations . . . ." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007)).

Rule 15(d) provides that a court may permit a party to serve a "supplemental pleading" setting out "any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," and may require the opposing party to respond to the supplemental pleading within a specified time. A plaintiff may add new parties and claims for events that occurred after the filing of the original or operative complaint through a supplemental pleading. *See Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 226–27 (1964) (approving supplemental pleading alleging new incidents involving new parties because they stemmed from original causes of action); *Turner v. New Jersey State Police*, No. 2:08-CV-5163-KM, 2014 WL 6991892, at *3 (D.N.J. Dec. 5, 2014) (same) (citing *Griffin*).

## II. ANALYSIS

### A. Claims in Proposed Amended Complaint against Individual Defendants[2]

The claims in Tejada's proposed Amended Complaint fall into four categories for purposes of analyzing leave to amend: (1) those claims that have already been alleged in prior complaints; (2) those claims which have not been previously alleged, but are based on events that transpired prior to the filing of the first complaint; (3) those claims for which amendment would be futile; and (4) those claims based on events which transpired subsequent to the filing of all previous complaints. This Court denies Tejada the opportunity to amend for a third time with respect to those claims that fall in to categories one, two, and three. However, this Court construes those claims that fall into category four as a supplemental pleading and will require Defendants to respond.

---

[2] Tejada's proposed Amended Complaint adds the following individual defendants: Warden of Lehigh County Prison John Doe, Deputy Wardens John and Jane Doe, Shift Commander Captain John Doe, Internal Affairs Officer John Doe, Corrections Officer David Eitemiller, Corrections Officer Reeves, Sergeant Devan Allwein, Lieutenant Gregory Thomas.

### (1) Category One: Tejada's proposed amended Counts I, III, V, IX, and X are unduly delayed because Tejada has alleged each of these claims in prior Complaints.

The proposed amended Counts I, III, V, IX and X[3] are all unduly delayed. The current operative complaint, filed on December 11, 2014, contains allegations to the same effect as those outlined above. *See generally* Compl. of December 11, 2014 ¶¶ 31-59, ECF No. 17. The only difference between the complaint of December 2014 and these proposed amended claims is the splitting of those previously alleged claims into more discrete units. *Compare id.*, *with* Proposed Amend. Compl. ¶¶ 71-187, ECF No. 92. Tejada admits this and states that "Plaintiff's third amendment (docket No. 92) did not seek to add a new claim or insert a new theory into the case, as the proposed amended complaint . . . simply clarifies or amplifies the claim or theory in the original complaint (retaliation) by the additional facts . . . ." Pl.'s Obj. and Response ¶ D, ECF No. 139.

Because these claims have already been alleged in some form in a previous complaint filed almost four years ago, these proposed amendments are unduly delayed. *See Bjorgung*, 550 F.3d 263, 266-67 (denying leave to amend where plaintiff waited "three and one half years before seeking leave to amend" and the facts that surrounded the amendment were known to plaintiff for that entire period); *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (denying leave to amend where plaintiff waited three years to amend and "the factual information on which the proposed amendment relied was known almost two-and-a-half years before plaintiffs sought leave to amend"). Therefore, this Court denies the proposed amendment to add the Counts listed above as unduly delayed.

---

[3] Count I alleges a violation of due process rights, Count III alleges excessive force, Count V alleges cruel and unusual punishment, Claim IX alleges assault, and Claim X alleges battery.

**(2) Category Two: Tejada's proposed amended Counts XIII and XV are unduly delayed because Tejada could have raised these claims when he filed his first complaint.**

Although the claims against the individual defendants for "atypical and significantly hard confinement condition," Count XIII, and "hate crime and/or racial discrimination," Count XV, were not raised in the current operative complaint, the underlying events occurred prior to the filing of the very *first* complaint. *See* Proposed Amend. Compl. ¶¶ 39, 163. The events that Tejada cites as the basis for his confinement claim occurred on August 8, 2013, when Tejada arrived at Lehigh County Prison. *Id.* ¶ 39. This event predates Tejada's first complaint, which he filed on September 8, 2014. Additionally, the events underlying his claims of discrimination and a "hate crime" occurred on August 16, 2013. *Id.* ¶ 24. Again, this event predates Tejada's first complaint.

As such, Tejada had multiple opportunities to amend his complaint to include these claims and has failed to do so at each juncture. Furthermore, he has not provided any reason for his failure to bring these claims in any of his previous amendments over the last four years. Therefore, the Court denies Tejada's proposed amendment to add the above claims as unduly delayed.

**(3) Category Three: Amendment to add Tejada's proposed Count VII is futile because Tejada fails to state a claim upon which relief can be granted.**

In Count VII of his proposed Amended Complaint, Tejada claims liability for the newly-named officers under an Eighth Amendment cruel and unusual punishment theory. *See id.* ¶¶ 109-116. The officers named in this count are those that were either down the hall during the alleged use of force against Tejada or those watching the security cameras at the time. *Id.* ¶¶ 32-33.

5
080218

According to the Court of Appeals for the Third Circuit, "[t]he restriction on cruel and unusual punishment contained in the Eighth Amendment reaches non-intervention just as readily as it reaches the more demonstrable brutality of those who unjustifiably and excessively employ fists, boots or clubs." *Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002) The Third Circuit has held that a "police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force . . . ." *Id.* at 650 ( "Although our case law refers to police officers, not corrections officers, this does not change our analysis."). The bystander officer may be liable "if there is a realistic and reasonable opportunity to intervene" that the officer ignores. *Id.* at 651.

Although Tejada alleges that correctional officers Eitemiller and Reeves "failed to intervene," Proposed Amend. Compl. ¶ 32, he also alleges that it was the statements and actions of those observing officers that caused Dale to stop his attack. *Id.* ¶ 35. Specifically he alleges that officer Eitemiller said "give up before some body [sic] comes . . . ." *Id.* ¶ 35. He also alleges that "others started saying stop hurting him . . . ." *Id.* Therefore, it would seem that there was a realistic and reasonable opportunity to intervene and that officers did so. Therefore, because there was intervention, Tejada has failed to state a claim upon which relief can be granted. *See Smith*, 293 F.3d at 650-651 (requiring that the observing officer "fails or refuses to intervene" for liability to attach).

**(4) Category Four: Tejada's proposed amended Counts XI and XVII are accepted as a supplemental pleading.**

In Count XI of his proposed Amended Complaint, Tejada alleges that he was retaliated against for filing grievances and bringing this lawsuit against some of the officers. *See id.* ¶¶ 137-143. This alleged retaliation manifested itself in the confiscation of Tejada's property, which included, *inter alia*, his documents related to this present lawsuit. *See id.* ¶ 139. Tejada alleges

6
080218

that this property was either lost or destroyed, and bases the claim for deprivation of property in Count XVII on these allegations. *See id.* ¶ 64.

There are two dates alleged in the proposed Amended Complaint on which the taking of property occurred. *Id.* ¶ 57. The first allegedly occurred on June 27, 2014. *Id.* ¶ 59. This date falls before the filing of Tejada's first complaint. As such, four years later, any claim relating to the taking of property on June 27, 2014, is delayed to an undue extent and could have been raised at multiple points in these proceedings. However, Tejada also alleges incidents whereby Sergeant Devan Allwein planted contraband in his property and confiscated affidavits in Tejada's possession. *Id.* ¶¶ 61, 65. These events allegedly occurred on April 4, 2016, and April 5, 2016 respectively, well after the filing of the current operative complaint. *Id.* Therefore, the events that transpired in April 2016 are appropriate for treatment under Federal Rule of Civil Procedure 15(d), which allows supplemental pleadings based on events that occur after the filing of an initial pleading.[4] *See* Fed. R. Civ. P. 15(d).

Although Tejada asserts his claim for deprivation of property against the individual defendants in Count VII in due process terms, deprivations of property do not violate due process where the aggrieved party has a meaningful post-deprivation remedy for the loss. The Third Circuit has held that Pennsylvania tort law provides this kind of remedy. *See Pressley v. Huber*, 562 F. App'x 67, 69–70 (3d Cir. 2014) (affirming dismissal of prisoner's federal claim based on prison's destruction of his legal materials). Thus, this Court construes Tejada's deprivation of

---

[4] As previous courts have recognized, amending a pleading and supplementing a pleading are different procedures. Amending a pleading involves entirely replacing the earlier pleading with a new pleading containing matters that occurred prior to the filing of the original pleading, while supplementing a pleading involves merely adding to the original pleading events occurring subsequent to the earlier pleading. *Francis ex rel. Estate of Francis v. Northumberland Cty.*, 636 F. Supp. 2d 368, 389 (M.D. Pa. 2009) (citing 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1504 (3d ed. 2004)).

property claim as a claim for replevin or conversion under Pennsylvania law. "Replevin is an action at law to recover the possession of personal property and to recover damages incurred as a result of the defendant's illegal detention of plaintiff's property." *Fenton v. Balick*, 821 F. Supp. 2d 755, 759 (E.D. Pa. 2011) (citing *Transport Int'l Pool, Inc. v. United Transport Carriers,* Civ. A. No. 02–8163, 2003 WL 1918973, at *3 (E.D. Pa. Apr. 21, 2003)). "To prevail in a replevin action, 'the plaintiff must show not only title, but also the exclusive right of immediate possession of the property in question.'" *Id.* (quoting *Susquehanna Commercial Fin., Inc. v. French,* Civ. A. No. 10–7481, 2011 WL 1743503, at *4 (E.D. Pa. May 5, 2011)). "[U]nder Pennsylvania law, conversion is the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" *Id.* at 760 (citing *Universal Premium Acceptance Corp. v. York Bank & Trust Co.,* 69 F.3d 695, 704 (3d Cir.1995))."Where one lawfully comes into possession of a chattel, a conversion occurs if a demand for the chattel is made by the rightful owner and the other party refuses to deliver." *Id.* (quoting *Prudential Ins. Co. of America v. Stella,* 994 F. Supp. 318, 323 (E.D. Pa.1998)).

The statute of limitations for both retaliation claims under § 1983 and claims for replevin or conversion under Pennsylvania law is two years. *Cibula v. Fox*, 570 F. App'x 129, 134 (3d Cir. 2014) (stating that federal courts apply Pennsylvania's two-year limitations period for personal injury suits to § 1983 claims arising in Pennsylvania); 42 Pa. C.S. § 5524(3). The events underlying Tejada's retaliation and replevin/conversion claims occurred on April 4 and April 5, 2016. Tejada filed his motion for leave to amend on May 16, 2016. Therefore, his claims are timely.

This Court construes Counts XI and XVII as a supplemental pleading and will require Defendants to respond.

## B. Claims in Proposed Amended Complaint against Lehigh County

All of the counts alleged against Lehigh County sound in § 1983 liability with the exception of one, which claims an alternative basis in state law.[5] *See generally* Proposed Amend. Compl. ¶¶ 71-187. Each of the counts alleges that either (1) Lehigh County employed "policies and regulations mandating" the harmful conduct that Tejada endured, or (2), in the alternative, Lehigh County "failed to act or implement policies to prevent" the harmful conduct and maintained "customs of not enforcing" prison policies. *See, e.g.*, *id.* ¶¶ 79-81, 93-95, 105-107. Further, each of the counts alleges some constitutional deprivation as a result of either the policy or lack thereof. *See id.* ¶¶ 82, 95, 107, 121, 148, 160, 173, 186.

Liability under § 1983, also known as *Monell* liability, attaches to a governmental body "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). The plaintiff may allege liability under either a *Monell* policy theory or a *Monell* custom theory. *See id.*

"To satisfy the pleading standard for a *Monell* policy claim, [a] plaintiff 'must identify a custom or policy and specify what exactly that custom or policy was.'" *Thomas v. City of Chester*, No. CV 15-3955, 2016 WL 1106900, at *3 (E.D. Pa. Mar. 21, 2016) (citing *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)). A complaint fails to sufficiently plead a

---

[5] For reference, the Counts alleged against Lehigh County are II, IV, VI, VIII, XII, XIV, XVI, and XVIII. It is further noted that Counts VI and VIII appear to be duplicates of one another. Count XIV, atypical confinement and significantly hard conditions, alleges an alternative basis in state law.

*Monell* policy claim where "[it] fails to identify any specific custom or policy, but instead alleges that the policies were 'insufficient' in a generic way." *Id.* at *4.

While Tejada alleges that there are policies "mandating" that the individual Defendants cause various types of harm, he does not identify any policy to support his allegations.[6] *See, e.g.*, Proposed Amend. Compl. ¶¶ 79, 93, 105. Therefore, by failing to identify any specific policy that led to constitutional harms, Tejada has failed to state a claim under the *Monell* policy theory.

The other avenue of liability under *Monell* is that of custom. A custom is "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" *Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 743 (E.D. Pa. 2014) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). The plaintiff must show "the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'" *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (citing *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference." *Martin v. City of Reading*, 118 F. Supp. 3d 751, 771 (E.D. Pa. 2015) (citing *Brown*, 520 U.S. at 409).

In each count against the County, Tejada baldly alleges that "Lehigh County was aware of instances" of harmful conduct and that it had "customs of not enforcing" its prison procedure

---

[6] Rather, Tejada alleges baldly, for example, that "[L]ehigh [C]ounty implemented policies and regulations mandating the individual [D]efendants assault Jews." *Id.* ¶ 170. Tejada cites to no policy or regulation to support this assertion. Each of his claims against Lehigh County reiterates the same sentence, changing only the act that follows the words "mandating the individual [D]efendants . . . ." *See id.*

policies. *See, e.g.*, Proposed Amend. Compl. ¶¶ 80-81, 94-95, 106-107. This language, however, is merely a legal conclusion. *See Boyden*, 5 F. Supp. 3d at 743 ("Boyden alleges that the Upper Darby Township Police Department has a custom of using excessive force when making arrests . . . .To be sure, this statement is a legal conclusion not entitled to the assumption of truth."). Tejada alleges no facts to suggest that either Dale or the other officers of the Lehigh County Jail were engaged in an ongoing and widespread practice of violating the policies of the prison.

Tejada alleges that the failure of the individual Defendants to report their use of force against him is evidence that the "use of force policy is ineffective . . . [and Lehigh County] has a custom of not enforcing the use of force policy." *See* Proposed Amend. Compl. ¶ 53. However, this single alleged incident of non-reporting cannot constitute a custom. *See Monell*, 436 U.S. at 691 (describing a custom as "persistent and widespread").

This same deficiency is found in all of Tejada's claims against the County. While Tejada alleges that the policies exist, he makes no reference to any specific policy to support his allegations. In the alternative, Tejada alleges that a custom exists involving the non-enforcement of the policies that govern correctional officer conduct. However, Tejada does not provide any evidence to show that these alleged customs are persistent and widespread beyond the standalone harm that he alleges he suffered. Therefore, Tejada has failed to state any § 1983 *Monell* claim against Lehigh County in this action. Because the claims alleged against Lehigh County in this proposed amendment are facially inadequate, amendment would be futile. Therefore, this Court denies Tejada's request to amend with respect to all of the claims alleged against Lehigh County sounding in § 1983.

To the extent that Tejada's proposed amended Count XIV against the County alleging "atypical and significantly hard confinement conditions," *see* Proposed Amend. Compl. ¶ 160,

has an additional basis in state law, amendment is improper because of undue delay. Tejada alleges in his proposed Amended Complaint that he was "placed in solitary confinement for no reason" in violation of Title 37 of the Pennsylvania Code § 93.11.[7] *See id.* ¶¶ 39, 160. According to Tejada, he was placed in solitary confinement when he arrived at the Lehigh County Jail on August 8, 2013, and remained in solitary confinement until his transfer from the Lehigh County Jail on August 16, 2013. *See id.* ¶ 39. These events occurred well in advance of the time Tejada filed his first complaint, but he did not raise the state law claim until his third attempt to amend. Nor does he now offer any reason for his delay. Accordingly, this Court denies Tejada leave to amend and add Count XIV.

However, this Court will construe Tejada's claim against Lehigh County for deprivation of personal property in Count XVIII as a supplemental pleading asserting state law claims for replevin or conversion for the same reasons discussed above with respect to the claims against the individual defendants, and will require Lehigh County to respond.

## III. CONCLUSION

For the sake of clarity in bringing this litigation to a conclusion, this Court summarizes Tejada's claims. From the current operative complaint, ECF No. 27, the following claims remain:

- Count I: Excessive force in violation of the Eighth Amendment, against Defendant Dale;

---

[7] The relevant portion of § 93.11 states that "[t]he Department [of Corrections] will maintain written procedures which describe the reasons for housing an inmate in the RHU and require due process in accordance and with established principles of law for an inmate who is housed in the RHU." 37 Pa. Code § 93.11. The required written procedures have been set forth by the Pennsylvania Department of Corrections in DC-ADM 802. *See Torres v. Beard*, 997 A.2d 1242, 1248 (Pa. Commw. Ct. 2010). The relevant portion of the procedures states that "[w]henever practical, written notice of the reasons for [Administrative Custody] placement is given to the inmate prior to placement, but in all cases within 24 hours after placement." *See* DC-ADM 802 § 1(B)(4).

- Count II: Failure to train against Lehigh County;[8]

- Count III: Violation of Article 1 § XIII of the Pennsylvania Constitution against Defendant Dale;

- Count IV: Violation of Pennsylvania Code Title 37 § 95.241 against Defendant Dale;

- Count V: Assault and Battery against Defendant Dale.

*See* Memo. Mot. Dismiss, ECF No. 37. The following claims from Tejada's proposed Amended Complaint are construed as a supplemental pleading under Rule 15(d):

- Count XI: Retaliation against the individual defendants;

- Count XVII: Deprivation of property (replevin/conversion) against the individual defendants;

- Count XVIII: Deprivation of property (replevin/conversion) against Lehigh County.

This Court accepts Tejada's allegations concerning retaliation and deprivation of property as a supplemental pleading and will require Defendants to respond. His motion for leave to amend is denied in all other respects. A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[8] This Court previously dismissed Count II because Tejada brought it originally against "The City of Lehigh County," ECF No. 37, which this Court had previously dismissed as a nonexistent party. ECF No. 19. On February 5, 2016, this Court granted Tejada's request to correct the caption to list Lehigh County as a party and reinstated Count II against the County. ECF No. 71. The County subsequently answered the complaint, ECF No. 39, and later filed an amended answer. ECF No. 76.